Elizabeth J. Cabraser (SBN 083151)
*ecabraser@lchb.com*
Todd A. Walburg (SBN 213063)
*twalburg@lchb.com*
Phong-Chau G. Nguyen (SBN 286789)
*pgnguyen@lchb.com*
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Dawn M. Barrios (*Pro Hac Vice*
anticipated)
*barrios@bkc-law.com*
Zachary Wool (*Pro Hac Vice*
anticipated)
*zwool@bkc-law.com*
BARRIOS, KINGSDORF &
CASTEIX, LLP
701 Poydras St., Suite 3650
New Orleans, LA 70139
Telephone: (504) 524-3300
Facsimile: (504) 524-3313

W. Daniel ("Dee") Miles, III (*Pro Hac
Vice* anticipated)
*dee.miles@beasleyallen.com*
Archie I. Grubb, II (*Pro Hac Vice*
anticipated)
*archie.grubb@beasleyallen.com*
Andrew Brashier (*Pro Hac Vice*
anticipated)
*Andrew.Brashier@BeasleyAllen.com*
BEASLEY ALLEN CROW METHVIN
PORTIS & MILES PC
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Attorneys for Plaintiffs Luke Hooper,
Charlotte Whitehead, and Melinda
Tingle, individually and behalf of all
others similarly situated*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUKE HOOPER, CHARLOTTE WHITEHEAD, and MELINDA TINGLE, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., HONDA MOTOR CO., LTD., TAKATA CORPORATION, TK HOLDINGS, INC., HIGHLAND INDUSTRIES, INC.,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1203335.3

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

NATURE OF THE CASE ......................................................................... 1

JURISDICTION AND VENUE ................................................................ 1

PARTIES ................................................................................................... 1

FACTUAL BACKGROUND ..................................................................... 3

TOLLING OF THE STATUTE OF LIMITATIONS  FRAUDULENT CONCEALMENT ................................................................................. 9

ESTOPPEL ............................................................................................... 10

DISCOVERY RULE ................................................................................ 10

CLASS ACTION ALLEGATIONS ......................................................... 11

NATIONWIDE CLASS ........................................................................... 11

NUMEROSITY AND ASCERTAINABILITY ...................................... 11

TYPICALITY ........................................................................................... 12

ADEQUATE REPRESENTATION ......................................................... 12

PREDOMINANCE OF COMMON ISSUES .......................................... 12

SUPERIORITY ........................................................................................ 13

CHOICE OF LAW ALLEGATIONS ...................................................... 14

CLAIMS FOR RELIEF ........................................................................... 16

    FIRST CLAIM FOR RELIEF Violation of the Magnuson-Moss Warranty Act 15 U.S.C. §§ 2301 *et seq.* (Brought on behalf of the Nationwide Class) ........................................................................ 16

    SECOND CLAIM FOR RELIEF Fraudulent Concealment (Brought on behalf of the Nationwide Class) ............................................................ 20

    THIRD CLAIM FOR RELIEF Fraud, Deceit, and Concealment  Cal. Civil Code §§ 1709, 1710, 1711  (Brought on behalf of the Nationwide Class) ................................................................................ 22

    FOURTH CLAIM FOR RELIEF Violation of the Consumer Legal Remedies Act Cal. Civil Code § 1750 *et seq.* (Brought on behalf of the Nationwide Class) ......................................................................... 23

    FIFTH CLAIM FOR RELIEF Violations of the California Unfair Competition Law Cal. Bus. & Prof. Code § 17200, *et seq.* (Brought on behalf of the Nationwide Class) ..................................... 30

1
2

### TABLE OF CONTENTS
### (continued)

|  |  | Page |
|---|---|---|
| 3 | <u>SIXTH CLAIM FOR RELIEF</u> Violation of the California False Advertising Law Cal. Bus. & Prof. Code § 17500, *et seq.* | |
| 4 | (Brought on behalf of the Nationwide Class) | 33 |
| 5 | <u>SEVENTH CLAIM FOR RELIEF</u> Negligent Failure to Recall (Brought on behalf of the Nationwide Class) | 35 |
| 6 | PRAYER FOR RELIEF | 36 |
| 7 | DEMAND FOR JURY TRIAL | 37 |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **NATURE OF THE CASE**

1.      Plaintiffs Luke Hooper, Charlotte Whitehead, and Melinda Tingle bring this action individually and on behalf of all persons similarly situated in the United States who purchased or leased certain vehicles manufactured, distributed, and/or sold by HONDA MOTOR CO. LTD., AMERICAN HONDA MOTOR CO., INC., and/or its related subsidiaries, successors, or affiliates ("Honda") with defective airbags manufactured by TAKATA CORPORATION, TK HOLDINGS, INC., HIGHLAND INDUSTRIES, INC., and/or its related subsidiaries, successors, or affiliates ("Takata"), as described below.

2.      To date, more than 14 million cars with Takata-manufactured airbags have been recalled due to defect(s) described herein ("Defective Airbags").  Among those 14 million vehicles are over 5 million Honda vehicles.  Plaintiffs seek redress individually and on behalf of those similarly-situated for losses stemming from the Defendants' manufacture and use of defective airbags in those Honda vehicles.

## **JURISDICTION AND VENUE**

3.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Defendants conduct substantial business in this District, have caused harm to Class Members residing in this District.

## **PARTIES**

5.      Plaintiff Luke Hooper is a resident and citizen of New Orleans, Louisiana.  Plaintiff Hooper acquired a 2006 Honda Accord, VIN JHMCM564X6C000229, which, unknown at the time of acquisition, contained Defective Airbags that could injure and/or kill.

6.      Plaintiff Charlotte Whitehead is a resident and citizen of Eufaula, Alabama.  Plaintiff Whitehead acquired a 2003 Honda Civic, VIN 2HGES16513H513574, which, unknown at the time of acquisition, contained Defective Airbags that could injure and/or kill.

7.      Plaintiff Melinda Tingle is a resident and citizen of Macon Georgia. Plaintiff Tingle acquired a 2004 Honda CRV, VIN SHSRD78844U219509, which, unknown at the time of acquisition, contained Defective Airbags that could injure and/or kill.

8.      Defendant American Honda Motor Co., Inc., is a California corporation with its headquarters in Torrance, CA.  It is the North American subsidiary of Honda Motor Co., Ltd., for which it conducts the sales, marketing, manufacture, assembly and operational activities in North America, including the manufacture of the Class Vehicles at issue here.

9.      Defendant Honda Motor Co., Ltd., is a foreign, for-profit corporation with its principal place of business in Tokyo, Japan, that designs, markets, manufactures and sells automobiles through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe and Asia.

10.     Defendant Takata Corporation is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  It is a specialized supplier of automotive safety systems that it designs, manufactures, tests, markets, distributes and sells.  It is a vertically-integrated company, and manufactures component parts in its own facilities.

11.     Defendant TK Holdings, Inc., is a Delaware corporation with its headquarters in Auburn Hills, Michigan.  As the American subsidiary of the Japanese company Takata Corporation, TK Holdings, Inc., sells, designs, manufactures, tests, markets, and distributes airbags in the United States.  Directly or through its subsidiaries, TK Holdings, Inc. owns and operates 56 manufacturing

plants in 20 countries.  TK Holdings, Inc. manufactured the Defective Airbags at issue in this litigation.

12.     Highland Industries, Inc., a subsidiary of Takata Corporation, is a Delaware corporation with its headquarters in Greensboro, North Carolina.  It manufactures industrial and automotive textile products, including airbag fabrics used in the Defective Airbags.

13.     Defendants American Honda Motor Co., Inc., Honda Motor Co., Ltd., Takata Corporation, TK Holdings, Inc., and Highland Industries, Inc. are collectively referred to in this Complaint as "Defendants."

**FACTUAL BACKGROUND**

14.     As used in this Complaint, the "Class Vehicles" refer to the Honda vehicles sold in the United States, equipped at the time of sale with Takata airbags sharing a common, uniform, and defective design and/or production, including the following makes and model years:

- 2001- 2007 Honda Accord
- 2001 - 2005 Honda Civic
- 2002 - 2006 Honda CR-V
- 2003 - 2011 Honda Element
- 2002 - 2004 Honda Odyssey
- 2003 - 2007 Honda Pilot
- 2006 Honda Ridgeline
- 2003 - 2006 Acura MDX
- 2002 - 2003 Acura TL/CL
- 2005 Acura RL

15.     All persons in the United States who have purchased or leased a Class Vehicle equipped with the Defective Airbags are herein referred to as Class Members ("Class Members").

16.     All Class Members were placed at risk by the Defective Airbags from the moment they first drove their vehicles.  The Defective Airbags preclude all Class Members from proper and safe use of their vehicles, reduces vehicle occupant protection, and endangers Class Members and other vehicle occupants.  However, none of the Class Members knew, or could reasonably have discovered, the Defective Airbag, prior to it manifesting in a sudden and dangerous failure.

17.     Upon information and belief, prior to the sale of most Class Vehicles, Honda knew of the Defective Airbags.  Yet, despite this knowledge, Honda and Takata failed to disclose – and actively concealed – the Defective Airbags from Class Members, the public, and federal regulators, and continued to market and advertise the Class Vehicles as reliable and safe vehicles, which they are not.

18.     As a result of Honda's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles are unsafe, unfit for their ordinary and intended use, and have manifested, or are at unreasonable risk of manifesting, the Defective Airbags by way of a sudden and dangerous failure that puts them and others at serious risk of injury or death. Plaintiffs and the Class did not receive the benefit of their bargain as purchasers and lessees, received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations.  Plaintiffs and Class Members did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided, as Honda knew but did not disclose, through the use of non-defective airbag parts.  A car purchased or leased under the reasonable assumption that it is "safe" as advertised is worth more than a car – such as the Class Vehicles – that is known to contain a safety defect such as the Defective Airbags.

19.     As a result, all purchasers of the Class Vehicles overpaid for their cars at the time of purchase.  Furthermore, Honda's public disclosure of the Defective Airbags has further caused the value of the Class Vehicles to materially diminish. Purchasers or lessees of the Class Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the Defective Airbags been disclosed.

20.     Airbags are meant to inflate rapidly during an automobile collision to cushion occupants during a collision.  This protects the occupants' bodies when they strike the parts of the vehicle, such as the steering wheel, dash board, or windshield.  When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those vehicles to make those vehicles safe for their ordinary use and purpose.  One of those central safety features is the airbag, which is deployed by what should be a small, controlled explosion of propellants in a metal canister.  These metal canisters are also known as inflators.

21.     The first manifestation of the Defective Airbags dates back as early as April 2002, when a Takata airbag exploded in a Toyota Corolla.  Shortly thereafter, Takata made certain changes and/or upgrades to its production facility in Moses Lake, changes it claims are unrelated to the 2002 incident but should have fixed stopped the factory from producing airbags with a defect.

22.     In 2004, a Defective Airbag exploded in a Honda Accord in Alabama. Honda and Takata investigated the incident, and both concluded that the incident was an "anomaly" when reporting it to the National Highway Traffic Safety Administration, or "NHTSA."

23.     By 2007, at least three more incidents of Defective Airbags exploding were reported to Honda.  Honda then reported the incidents to Takata.  Towards the end of the year, Takata told Honda that it thought the airbags were defective because workers at Takata's Mexican production facility had left moisture-sensitive

explosives on the floor and in the open, making them prone to overly energetic combustion.

24.     Takata assured Honda that the problem had been fixed by late 2002; however, despite these assurances that had remedied the cause of the problem, Takata and Honda jointly continued to monitor and investigate the Defective Airbags without notifying owners of Honda vehicles that their airbag may be lethal.

25.     To continue secretly investigating the Defective Airbags, Honda began collecting inflators from Defective Airbags in cars returned to Honda dealerships for unrelated warranty claims.  Honda then sent the secretly-culled inflators to Takata.

26.     After studying the secretly-culled inflators, Takata determined by November 2008 that the Defective Airbags were rendered defective by excess moisture getting into the inflator.  At this time, Honda decided to recall 4,200 Civics and Accords.  In the recall and in its report to federal regulators, Honda and Takata failed to disclose knowledge of four incidents in which the Defective Airbags caused bodily injury.

27.     In April 2009 the airbag of Jennifer Griffin's 2005 Honda Civic exploded after a minor traffic accident in Orlando, Florida.  State troopers investigating the incident were baffled by the fact that such a minor accident could cause a 2" piece of metal shrapnel to tear through Ms. Griffin's neck.

28.     One month later, 18 year old Ashley Parham was killed in Midwest City, Oklahoma, when the airbag in her 2001 Honda Accord exploded out of her steering wheel in a minor crash.

29.     By July 2009, Takata told Honda that it believed that its airbags were defective because of a flaw in the machinery that compressed the explosives in the inflator.  Rather than normally burning down and generating nitrogen to inflate the airbag, the explosive wafers made by the defective machinery burn aggressively

1    and cause the inflator canister of the Defective Airbags to burst, sending hot

2    fragments tearing through the fabric airbags.

3        30.    Around the same time, Honda issued its second recall for Defective

4    Airbags, this time for 510,000 more Honda and Acura models.  The recall

5    contained no information from Honda or Takata about known injuries and death

6    caused by the Defective Airbags.

7        31.    In December 2009 Gurgit Rathore collided with a mail truck in

8    Richmond, Virginia in her Honda Accord.  The airbag exploded, propelling

9    shrapnel into her neck and chest.  The injuries caused by the shrapnel caused her to

10   bleed to death in front of her three children.

11       32.    Three months later, Honda recalled an additional 438,000 Accord,

12   Civic, CR-V, Odyssey, Pilot and Acura models, its third recall for the same defect.

13   Despite knowing about the grizzly deaths of Ms. Rathore and Ms. Parham, Honda

14   and Takata said nothing about the risk of injury or death that the Defective Airbags

15   may cause.

16       33.    Takata, though, had not been producing airbags only for Honda.  For

17   years, Takata had grown as an airbag manufacturer, now producing 20% of airbags

18   sold worldwide.  One of its many customers was BMW, which wrote to Takata in

19   March 2010 and pressed for an explanation as to why Defective Airbags in Honda

20   vehicles were defective and those Takata airbags in BMW vehicles were safe.

21   Takata falsely reassured BMW that the defect in the Honda-installed airbags was

22   not present in the airbags in its vehicles.

23       34.    The next month, in April 2010, Kristy Williams stopped at a red light

24   in Georgia.  Her airbags spontaneously deployed, and the inflator canister exploded,

25   sending metal shards through the airbag.  The shards punctured her neck and

26   carotid artery.

27       35.    Following this incident, Takata reported another explanation for the

28   Defective Airbags to Honda.  This time around, Takata said that the defect could

have been caused when machine operators in its Moses Lake facility inadvertently switched off an "auto reject" button that weeded out poorly made explosives that could become unstable.  Takata reassured Honda, though, that it had locked the "auto reject" switch in the "on" position by September, 2002.

36.     Throughout this whole process, knowing of the issues with its Defective Airbags, Takata allowed its production facilities to keep crucial safety records in unreliable, hand-written notes.  This practice made it difficult to know which batches of airbags have a defective component, compounding even further the difficult of knowing which cars to recall.

37.     In April 2011 Honda issued its fourth recall.  Despite four rounds of recalls all for the same defect, Honda and Takata fail to notify consumers or government regulators that the Defective Airbags can cause injury and/or death.

38.     Finally, in December 2011 when it recalled a fifth round of cars for the same defect, Honda reported its first tally of injuries and deaths to federal regulators, a list it had been tracking since at least 2004.

39.     Takata's poor record keeping continued to plague the recall effect for this defect and, in the Spring of 2013, Honda issued its sixth recall for the same defect.  Shortly thereafter, NHTSA began in investigation into whether Honda should have alerted regulators earlier about the defect and whether Honda should have recalled the cars sooner.

40.     Other car manufacturers followed suit:  Nissan, Mazda, Ford, Chrysler and BMW all announced recalls due to the Defective Airbags.  Around the same time, a Honda spokesman said that Honda knew of 30 injuries and 2 deaths caused by the Defective Airbags.

41.     Due to the deadly nature of the Defective Airbags, NHTSA has taken the extreme step of warning owners of 4.7 million vehicles in states with high humidity that they should "act immediately" to have the Defective Airbags

1   repaired.  This NHTSA warning followed a report from Takata that Defective

2   Airbags are more likely to explode in humid climates.

3        42.   To make matters worse, Honda's and Takata's actions to hide the

4   explosive nature of the Defective Airbags from 2004 onward from consumers and

5   government regulators has resulted in a parts shortage; there are simply not enough

6   replacement airbags to replace the Defective Airbags in older model cars.  To

7   address this problem, Toyota has gone so far as to get regulatory permission to

8   disable a driver's side airbag until a replacement part can be found and installed.

9   On the passenger side, Toyota now puts a sticker warning that no one should sit in

10  the seat until the Defective Airbag can be removed and a replacement part installed.

11       43.   In addition, some manufacturers are not sending out recall letters for

12  these potentially deadly Defective Airbags until they have replacement parts,

13  leaving innocent and unknowing drivers and passengers continuing to use cars with

14  safety equipment that can maim and kill.

15       44.   Further, and in spite of Honda's belated recall of the Class Vehicles,

16  litigation is necessary in order to ensure that Class Members receive full and fair

17  compensation, under the auspices of court order, for their injuries.

18           **TOLLING OF THE STATUTE OF LIMITATIONS**

19                       **Fraudulent Concealment**

20       45.   Upon information and belief, Defendants have known of the Defective

21  Airbags in the vehicles since at least 2004 – and possibly earlier – and certainly

22  well before Plaintiffs and Class Members purchased the Class Vehicles, and have

23  concealed from or failed to notify Plaintiffs, Class Members, and the public of the

24  full and complete nature of the Defective Airbags.

25       46.   Although Defendants now acknowledge that they know of the serious

26  and possibly deadly defect, Defendants did not fully disclose the Defective Airbags

27  and in fact downplayed the widespread prevalence of the problem.

28

47.    In 2007, Defendants jointly studied the Defective Airbags in a secret program.  In this program, Honda would replace all or part of the Defective Airbags from cars brought into its dealerships for unrelated warranty repairs.  The Defective Airbags, or their component parts, would then be sent to Takata for study and review of the defect.

48.    Despite knowing early about the Defective Airbags and the damage they could cause, Defendants fraudulently concealed their knowledge from the public, insisting that the defect was not serious and was limited to a small subset of the eventually-recalled 5 million Honda vehicles.

49.    Pursuant to 49 U.S.C. § 30118(c), Honda was obligated and had a duty to disclose the Defective Airbags to NHTSA when it learned of the Defect and/or decided in good faith that the Class Vehicles did not comply with an applicable motor vehicle safety standard.

50.    Any applicable statute of limitation has therefore been tolled by Honda's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**Estoppel**

51.    Defendants were and are under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the vehicles. They actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles.  Plaintiffs and Class Members reasonably relied upon Honda's knowing and affirmative misrepresentations and/or active concealment of these facts.  Based on the foregoing, Honda is estopped from relying on any statutes of limitation in defense of this action.

**Discovery Rule**

52.    The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their vehicles had the Defective Airbags.

53.     However, Plaintiffs and Class Members had no realistic ability to discern that the vehicles were defective until – at the earliest – after the Defective Airbag exploded.  Even then, Plaintiffs and Class Members had no reason to know the explosion was caused by a defect in the airbags because of Defendants' active concealment of the true nature of the defect.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or c(4).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

55.     The proposed nationwide class is defined as:

### Nationwide Class

All persons or entities in the United States that purchased or leased a Honda Class Vehicle, and any other Honda vehicle model containing the same Takata airbag as those Class Vehicle models (Class Members).

56.     Excluded from the Class are:  (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into additional subclasses, or modified in any other way.

### Numerosity and Ascertainability

57.     Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

1   Class Members are readily identifiable from information and records in Honda's

2   possession, custody, or control.

3   **Typicality**

4       58.     The claims of the representative Plaintiffs are typical of the claims of

5   the Class in that the representative Plaintiffs, like all Class Members, purchased or

6   leased a Honda Class Vehicle designed, manufactured, and distributed by

7   Defendants.  The representative Plaintiffs, like all Class Members, have been

8   damaged by Defendants' misconduct in that they have incurred losses relating to

9   the Defective Airbags.  Furthermore, the factual bases of Defendants' misconduct

10  are common to all Class Members and represent a common thread of misconduct

11  resulting in injury to all Class Members.

12  **Adequate Representation**

13      59.     Plaintiffs will fairly and adequately represent and protect the interests

14  of the Class.  Plaintiffs have retained counsel with substantial experience in

15  prosecuting consumer class actions, including actions involving defective products.

16      60.     Plaintiffs and their counsel are committed to vigorously prosecuting

17  this action on behalf of the Class and have the financial resources to do so.  Neither

18  Plaintiffs nor their counsel have interests adverse to those of the Class.

19  **Predominance of Common Issues**

20      61.     There are numerous questions of law and fact common to Plaintiffs

21  and Class Members that predominate over any question affecting only individual

22  Class Members, the answers to which will advance resolution of the litigation as to

23  all Class Members.  These common legal and factual issues include:

24          a.      whether the Class Vehicles suffer from problems with Defective

25  Airbags;

26          b.      whether Defendants knew or should have known about the

27  Defective Airbags, and, if so, how long Defendants have known of the Defect;

28

c.     whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Honda Vehicle;

d.     whether Defendants had a duty to disclose the defective nature of the Vehicles to Plaintiffs and Class Members;

e.     whether Defendants omitted and failed to disclose material facts about the Vehicles;

f.     whether Defendants' concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing the Vehicles;

g.     whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability;

h.     whether Plaintiffs and Class Members are entitled to a declaratory judgment stating that the airbags in the Class Vehicles are defective and/or not merchantable;

i.     whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction; and,

j.     whether Defendants should be declared responsible for notifying all Class Members of the Defect and ensuring that all Honda vehicles with the Defective Airbags are recalled and repaired.

### **Superiority**

62.     Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

63.     Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class

1  Members' claims, it is likely that only a few Class Members could afford to seek
2  legal redress for Defendants' misconduct.  Absent a class action, Class Members
3  will continue to incur damages, and Defendants' misconduct will continue without
4  remedy.

5      64.    Class treatment of common questions of law and fact would also be a
6  superior method to multiple individual actions or piecemeal litigation in that class
7  treatment will conserve the resources of the courts and the litigants, and will
8  promote consistency and efficiency of adjudication.

9      65.    Defendants have acted in a uniform manner with respect to the
10  Plaintiffs and Class Members as all Class Members have been sent for all intents
11  and purposes the identical Important Safety Recall Notice letters from Honda in
12  accordance with the National Traffic and Motor Vehicle Safety Act.

13      66.    Classwide declaratory, equitable, and injunctive relief is appropriate
14  under Rule 23(b)(1) and/or (b)(2) because Defendants have acted on grounds that
15  apply generally to the class, and inconsistent adjudications with respect to the
16  Defendants' liability would establish incompatible standards and substantially
17  impair or impede the ability of Class Members to protect their interests.  Classwide
18  relief assures fair, consistent, and equitable treatment and protection of all Class
19  Members, and uniformity and consistency in Defendants' discharge of their duties
20  to perform corrective action regarding the Defective Airbags.

21                    **CHOICE OF LAW ALLEGATIONS**

22      67.    At all relevant times, Defendants performed substantial business in the
23  state of California.

24      68.    Defendant American Honda Motor Co., Inc. is headquartered in
25  Torrance, California.

26      69.    The following Honda facilities are based in California: U.S. Corporate
27  Headquarters, U.S. Sales and Marketing, Automobile Customer Service, the

28

Advanced Styling Center, three Parts Centers, and the Research and Development Test Track.

70.     In addition, the conduct that forms the basis for Plaintiffs' and each and every Class Member's claims against Defendants emanated from Defendant American Honda's corporate headquarters in Torrance, California.

71.     On information and belief, Defendant American Honda's personnel responsible for customer communications are located at its California headquarters, and the core decision not to disclose the Takata airbag safety defects to consumers was made and implemented from there.

72.     On information and belief, at all relevant times, Defendant American Honda, in concert with their California-based advertising agencies, failed to properly disclose the existence of the Defective Airbags.

73.     On information and belief, marketing campaigns falsely promoting the Class Vehicles as safe and reliable were conceived and designed in California.

74.     On information and belief, Defendant American Honda's personnel responsible for managing the customer service division are and were located at the California headquarters. The "Honda Automobile Customer Service" directs customers to call or fax the following numbers: Call: 1-800-999-1009 and Fax: 1-310-783-3023, which are landlines in Torrance, California. Customers are directed to send correspondence to American Honda Motor Co., Inc., Honda Automobile Customer Service, Mail Stop: 500 - 2N - 7A, 1919 Torrance Blvd., Torrance, CA 90501-2746. In addition, personnel from American Honda in Torrance, California, also communicate via Twitter ("@HondaCustSvc") with customers about Honda automobiles and services.

75.     On information and belief, Defendant American Honda's personnel responsible for communicating with dealers regarding known problems with Class Vehicles are and were also located at the California headquarters.

76. On information and belief, Defendant American Honda's personnel responsible for managing the distribution of replacement parts to dealerships are and were located at the California headquarters.

77. On information and belief, Defendant American Honda's presence is more substantial in California than any other state.

78. California's has a substantial interest in applying its consumer protection laws against Defendants.

79. California's state interests would be undermined if it is not able to extend its consumer protection laws to address Defendants' wrongful conduct.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301 *et seq.***
**(Brought on behalf of the Nationwide Class)**

80. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

81. Plaintiffs bring this Claim for Relief on behalf of members of the Nationwide Class.

82. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

83. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

84. Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

85. Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

86.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a claim for relief for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

87.     Defendants provided Plaintiffs and Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).  As a part of the implied warranty of merchantability, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured and marketed, and were adequately contained, packaged and labeled.

88.     Defendants breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).  Without limitation, the Class Vehicles share common design or manufacturing defects in that they are equipped with defective airbags that can explode, leaving occupants of the Class Vehicles vulnerable to serious injury and death.  Defendants have admitted that the Class Vehicles are defective by issuing recalls, but the recalls are woefully insufficient to address each of the defects.

89.     In their capacity as warrantors, Defendants had knowledge of the inherent defects in the Class Vehicles; any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles are unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

90.     The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants and Plaintiffs and Class Members as, at the time of purchase and lease, Plaintiffs and Class Members had no other options for purchasing warranty coverage other than directly from Defendants.

91.     The limitations on the warranties are substantively unconscionable. Defendants knew that the Class Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired.  Defendants failed to disclose these defects to Plaintiffs and Class Members.  Thus, Defendants' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

92.     Plaintiffs and each of the other Class Members have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract.  Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of the implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.  Instead, the warranty agreements were designed for and intended to benefit consumers.  Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities because of the aforementioned defects and nonconformities.

93.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

94.     Furthermore, affording Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here.  At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement

that Plaintiffs resort to an informal dispute resolution procedure and/or affords Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

95.     Plaintiffs and Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and Class Members have not re-accepted their Class Vehicles by retaining them.

96.     Pursuant to 15 U.S.C. § 2310(d)(3), the amount in controversy of Plaintiffs' individual claims meet or exceed the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

97.     In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and Class Members in connection with the commencement and prosecution of this action.

98.     Further, Plaintiffs and Class Members are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).  Based on Defendants' continuing failures to fix the known, dangerous defects, Plaintiffs seek a declaration that Defendants have not adequately implemented their recall commitments and requirements and general commitments to fix their failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted.  Plaintiffs also seek the establishment of a Defendant-funded program for Plaintiffs and Class Members to recover out-of-pocket costs incurred.

99.     Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs Plaintiffs have incurred in attempting to rectify the airbags in Plaintiffs' vehicle.  Such expenses and losses will continue as Plaintiffs and Class Members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in going through the recall process.

100.    The right of Class Members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendants' conduct presents common questions of law.  Equity and fairness requires the establishment by Court decree and administration under Court supervision of a program funded by the Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

### SECOND CLAIM FOR RELIEF
**Fraudulent Concealment**
**(Brought on behalf of the Nationwide Class)**

101.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

102.    As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.  Defendants knew that the Class Vehicles were designed and manufactured with airbag defects, but Defendants concealed those material facts.  Defendants recklessly manufactured and distributed the Class Vehicles to consumers in the United States, even though Defendants knew, or should have known, at the time of distribution, that the Class Vehicles contained material airbag defects.  Plaintiffs and Class Members had no knowledge of these defects at the time that they purchased or leased the Class Vehicles.

103.    Defendants made material omissions and/or affirmative misrepresentations regarding the safety of their vehicles.

104.    Defendants each knew these representations were false when they were made.

105.   The Class Vehicles purchased or leased by Plaintiffs and Class Members were, in fact, defective, unsafe, and unreliable, because the vehicles contained dangerous airbag defects.

106.   Defendants had a duty to disclose these safety issues to Plaintiffs, Class Members, the public, and NHTSA, but failed to do so.

107.   Defendants had a duty to disclose the true facts about the safety of the Class Vehicles because Defendants had superior knowledge and access to those facts, and the facts were not known to or reasonably discoverable by Plaintiffs and Class Members.  Defendants knew that Plaintiffs and Class Members had no knowledge of dangerous airbag defects in the Class Vehicles, and that neither Plaintiffs nor the other Class Members had an equal opportunity to discover the facts to inform them of those defects.  Indeed, Plaintiffs and Class Members trusted Defendants not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

108.   Defendants had a duty to disclose that the Class Vehicles were defective, unsafe, and unreliable in that it contained dangerous airbag defects, because Plaintiffs and Class Members relied on Defendants' representations that the vehicles they were purchasing, leasing, and/or retaining were safe and free from defects.

109.   The aforementioned concealment was material, because if it had been disclosed, Plaintiffs and Class Members would not have bought, leased or retained their vehicles.

110.   The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle.  Defendants each knew or recklessly disregarded that their representations and/or statements on the safety of the Class Vehicles were false.

111.   By misrepresenting and/or failing to disclose these material facts, Defendants intended to induce Plaintiffs and Class Members to purchase or lease the Class Vehicles.

### THIRD CLAIM FOR RELIEF
**Fraud, Deceit, and Concealment**
**Cal. Civil Code §§ 1709, 1710, 1711**
**(Brought on behalf of the Nationwide Class)**

112.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if fully set forth herein.

113.   This Claim for Relief is brought on behalf of Plaintiffs and Class Members.

114.   At all relevant times, Defendants willfully deceived, fraudulently concealed, and/or failed to disclose to or warn Plaintiffs and Class Members of the true facts concerning the safety of the Class Vehicles and Takata airbags, which the Defendants had a duty to disclose.

115.   Defendants were under a duty to Plaintiffs and Class Members to disclose and warn of the defective nature of the Class Vehicle and/or Takata airbags because:  (1)  Defendants were in a superior position to know the true state of the facts about the hidden defects in the Class Vehicles and/or Takata airbags, and those defects were latent; (2)  Defendants made incomplete representations about the safety and quality of the Class Vehicles and/or Takata airbags while not revealing their true defective nature; and (3) Defendants fraudulently and affirmatively concealed the defective nature of the Class Vehicles and/or Takata airbags from Plaintiffs and Class Members.

116.   The facts concealed and/or not disclosed by Defendants to Plaintiffs and Class members were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or operate the Class Vehicles.

117.   At all times relevant hereto, Defendants, and each of them, conducted a sales and marketing campaign to promote the sale of the Class Vehicles and/or Takata airbags.  Defendants willfully deceived Plaintiffs, Class Members, NHTSA, and the general public, of the dangers and risks posed by the Class Vehicles and/or Takata airbags, and of the propensity for the Takata airbags to release shrapnel upon deployment or otherwise malfunction.

118.   Defendants intentionally concealed and suppressed the true facts concerning the Class Vehicles and/or Takata airbags with the intent to defraud Plaintiffs and Class Members in that Defendants knew that Plaintiffs and Class Members likely would not have purchased the Class Vehicles and/or Takata airbags if they knew of the true facts.

119.   As a result of the foregoing fraudulent and deceitful conduct by Defendants, Plaintiffs and Class Members suffered injuries in fact, and actual damages.

120.   By reason of the foregoing, Plaintiffs and Class Members are entitled to judgment against each Defendant, individually, jointly and severally for general, compensatory, and special damages in a sum according to proof at the time of trial as well as punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

### FOURTH CLAIM FOR RELIEF
**Violation of the Consumer Legal Remedies Act
Cal. Civil Code § 1750 *et seq.*
(Brought on behalf of the Nationwide Class)**

121.   This claim is brought on behalf of Plaintiffs and Class Members to seek injunctive relief against Defendants under the California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

122.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

123.   Defendants are "persons" under Cal. Civ. Code § 1761(c).

124.   The Plaintiffs and Class Members are "consumers," as defined by Cal. Civ. Code § 1761(d), who purchased or leased one or more Class Vehicles.

125.   The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]"  Cal. Civ. Code § 1770(a).  Defendants have engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1750, *et seq.*, as described above and below, by among other things, representing that Class Vehicles and/or Takata airbags have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles and/or Takata airbags are of a particular standard, quality, and grade when they are not; advertising Class Vehicles and/or Takata airbags with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles and/or Takata airbags has been supplied in accordance with a previous representation when it has not.

126.   In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Class Vehicles as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles.  Defendants are directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CLRA.  Defendant parent companies are also liable for their subsidiaries' violation of the CLRA, because the subsidiaries act and acted as the parent companies' general agents in the United States for purposes of sales and marketing.

127.   As alleged above, Defendants knew of dangers and risks posed by the Takata airbags, while Plaintiffs and Class Members were deceived by Defendants' omissions into believing the Class Vehicles were safe, and the information could not have reasonably been known by the consumer.

128.   Defendants knew or should have known that their conduct violated the CLRA.

129.   As alleged above, Defendants made material statements about the safety and reliability of Class Vehicles that were either false or misleading.

130.   Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning the Class Vehicles and/or Takata airbags, which they knew at the time of the sale or lease.  Defendants deliberately withheld the information about the Takata airbags' propensity to release shrapnel upon deployment or otherwise malfunction, in order to ensure that consumers would purchase their vehicles, and to induce the consumer to enter into a transaction.

131.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed all Class Vehicle owners/lessors to continue driving highly dangerous vehicles.

132.   Defendants each owed Plaintiffs and Class Members a duty to disclose the defective nature of Class Vehicles, and/or dangers and risks posed by the Takata airbags, including the dangerous risk that the Takata airbags will release shrapnel upon deployment, because they:

a.   Possessed exclusive knowledge of the defects rendering Class Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles;

b.   Intentionally concealed the hazardous situation with Class Vehicles and/or Takata airbags through their deceptive marketing campaign and

recall program that they designed to hide the life-threatening problems from Plaintiffs and Class Members; and/or

        c.    Made incomplete representations about the safety and reliability of Class Vehicles and/or Takata airbags, while purposefully withholding material facts from Plaintiffs and Class Members that contradicted these representations.

133.   The Class Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to Plaintiffs and Class Members, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to releasing shrapnel upon deployment or other malfunctions.

134.   The Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles and/or Takata airbags.  The Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiffs and Class Members.

135.   Defendants has also violated the CLRA by violating the TREAD Act, 49 U.S.C. §§ 30101, *et seq.*, and its accompanying regulations by failing to promptly notify vehicle owners, purchases, dealers, and NHTSA of the defective Takata airbags, and remedying the defects.

136.   Under the TREAD Act and its regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect.  49 U.S.C. § 30118(c)(1) & (2).

137.   Under the TREAD Act, if it is determined that the vehicle is defective, the manufacturer must promptly notify vehicle owners, purchasers and dealers of the defect and remedy the defect.  49 U.S.C. § 30118(b)(2)(A) & (B).

138.   Under the TREAD Act, manufacturers must also file a report with NHTSA within five working days of discovering "a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a

motor vehicle safety standard has been determined to exist."  49 C.F.R. § 573.6(a)
& (b).  At a minimum, the report to NHTSA must include:  the manufacturer's
name; the identification of the vehicles or equipment containing the defect,
including the make, line, model year and years of manufacturing; a description of
the basis for determining the recall population; how those vehicles differ from
similar vehicles that the manufacturer excluded from the recall; and a description of
the defect.  49 C.F.R. § 276.6(b), (c)(1), (c)(2), & (c)(5).

139.   The manufacturer must also promptly inform NHTSA regarding:  the
total number of vehicles or equipment potentially containing the defect; the
percentage of vehicles estimated to contain the defect; a chronology of all principal
events that were the basis for the determination that the defect related to motor
vehicle safety, including a summary of all warranty claims, field or service reports,
and other information, with its dates of receipt; and a description of the plan to
remedy the defect.  49 C.F.R. § 276.6(b) & (c).

140.   The TREAD Act provides that any manufacturer who violates 49
U.S.C. § 30166 must pay a civil penalty to the U.S. Government.  The current
penalty "is $7,000 per violation per day," and the maximum penalty "for a related
series of daily violations is $17,350,000."  49 C.F.R. § 578.6(c).

141.   Defendants engaged in deceptive business practices prohibited by the
CLRA, Cal. Civ. Code § 1750, *et seq.* by failing to disclose and by actively
concealing dangers and risks posed by the Takata airbags, by selling vehicles while
violating the TREAD Act, and by other conduct as alleged herein.

142.   Defendants knew that the Takata airbags contained a defect that could
cause the airbags release shrapnel upon deployment, or otherwise malfunction, but
Defendants failed for many years to inform NHTSA of this defect.  Consequently,
the public, including Plaintiffs and Class Members, received no notice of the
defects in the Takata airbags.  Defendants failed to inform NHTSA or warn the

1   Plaintiffs, Class Members, and the public about these inherent dangers, despite

2   having a duty to do so.

3       143.   Defendants' unfair or deceptive acts or practices were likely to and did

4   in fact deceive reasonable consumers, including Plaintiffs and Class Members,

5   about the true safety and reliability of the Class Vehicles and/or Takata airbags.

6       144.   The propensity of the Takata airbags to release shrapnel upon

7   deployment, or otherwise malfunction in the Class Vehicles was material to

8   Plaintiffs and Class Members.  Had Plaintiffs and Class Members known that their

9   vehicles had these serious safety defects, they would either not have purchased or

10  leased their Class Vehicles, or would have paid less for them than they did.

11      145.   All Class Members suffered ascertainable loss caused by the

12  Defendants failure to disclose material information.  The Class Members overpaid

13  for their vehicles and did not receive the benefit of their bargain.  The value of the

14  Class Vehicles has diminished as the result of the safety defects posed by the

15  Takata airbags, and Defendants' concealment of, and failure to remedy the defects.

16      146.   The Plaintiffs and Class Members have been proximately and directly

17  damaged by Defendants' misrepresentations, concealment, and non-disclosure of

18  the defects in the Class Vehicles and/or Takata airbags.  They own and lease

19  vehicles whose value has greatly diminished. The diminishment of the Class

20  Vehicles' value was only exacerbated by Defendants' failure to timely disclose and

21  remedy the dangers and risks posed by the Takata airbags.  Defendants' egregious

22  and widely-publicized conduct, and the piecemeal and serial nature of Defendants'

23  recalls have so tarnished the Class Vehicles that no reasonable consumer would

24  purchase them-let alone pay what would otherwise be fair market value for the

25  vehicles.

26      147.   Plaintiffs and Class Members risk irreparable injury as a result of

27  Defendants' acts and omissions in violation of the CLRA, and these violations

28  present a continuing risk to Plaintiffs and Class Members, as well as to the general

public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

148.   The recalls and repairs instituted by Defendants have not been adequate.  The recall is not an effective remedy and is not offered for all Class Vehicles and other vehicles with Takata airbags susceptible to the malfunctions described herein.  Moreover, Defendants' failure to comply with TREAD Act disclosure obligations continues to pose a grave risk to Plaintiffs and Class Members.

149.   As a direct and proximate result of Defendants' violations of the CLRA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage and, if not stopped, will continue to harm Class Members.  Plaintiffs and Class Members currently own or lease, or within the class period have owned or leased, Class Vehicles that are defective and inherently unsafe.  Plaintiffs and Class Members risk irreparable injury as a result of Defendants' acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public.

150.   Plaintiffs and Class Members seek an order enjoining Defendants unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

151.   In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiffs, will serve Defendants with notice of their alleged violations of California Civil Code § 1770(a) relating to the Class Vehicles purchased by Plaintiffs and Class Members, and demand that Defendants correct or agree to correct the actions described therein.  If Defendants fail to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiffs and Class Members are entitled.

**FIFTH CLAIM FOR RELIEF**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(Brought on behalf of the Nationwide Class)**

152.   This Claim for Relief is brought on behalf of Plaintiffs and Class Members.

153.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

154.   California Business and Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising. . . ."  Defendants engaged in conduct that violated each of this statute's three prongs.

155.   Defendants committed an unlawful business act or practice in violation of § 17200 by their violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, as set forth above, by the acts and practices set forth in this Complaint.

156.   Defendants also violated the unlawful prong because it has engaged in violations of National Traffic and Motor Vehicle Safety Act of 1996, codified at 49 U.S.C. § 30101, *et seq.*, and its regulations.

157.   Federal Motor Vehicle Safety Standard ("FMVSS") 573 governs a motor vehicle manufacturer's responsibility to notify the NHTSA of a motor vehicle defect within five days of determining that a defect in a vehicle has been determined to be safety-related.  *See* 49 C.F.R. § 573.6.

158.   Defendants violated the reporting requirements of FMVSS 573 requirement by failing to report the airbag defect or any of the other dangers or risks posed by the Takata airbags within five days of determining the defect existed, and failing to recall all affected vehicles.

159.   Defendants violated the common-law claim of negligent failure to recall, in that Defendants knew or should have known that the Class Vehicles

and/or Takata airbags were dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner; Defendants became aware of the attendant risks after the Class Vehicles were sold; Defendants continued to gain information further corroborating the defects and dangers posed by the Takata airbags; and Defendants failed to adequately recall the Class Vehicles and/or Takata airbags in a timely manner, which failure was a substantial factor in causing harm to Plaintiffs and Class Members, including diminished value and out-of-pocket costs.

160.   Defendants committed unfair business acts and practices in violation of § 17200 when it concealed the existence and nature of the defects, dangers, and risks posed by the Takata airbags.  Defendants represented that vehicles containing Takata airbags were reliable and safe when, in fact, they are not.  The Takata airbags present safety hazards for occupants of vehicles in which they are installed.

161.   Defendants also violated the unfairness prong of § 17200 by failing to properly administer the numerous recalls of Defendants' vehicles with the Takata airbags.  As alleged above, the recalls have proceeded unreasonably slowly in light of the safety-related nature of the defects, and have been plagued with shortages of replacement parts, as well as a paucity of loaner vehicles available for Class Members whose vehicles are in the process of being repaired.

162.   Defendants violated the fraudulent prong of § 17200 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

163.   Defendants committed fraudulent business acts and practices in violation of § 17200 when they concealed the existence and nature of the defect, dangers, and risks posed by the Takata airbags, while representing in their marketing, advertising, and other broadly disseminated representations that the vehicles containing Takata airbags were reliable and safe when, in fact, they are not.  Defendants' representations and active concealment of the dangers and risks

1    posed by the Takata airbags are likely to mislead the public with regard to the true

2    defective nature of the Class Vehicles and other vehicles with Takata airbags.

3        164.   Defendants have violated the unfair prong of § 17200 because of the

4    acts and practices set forth in the Complaint, including the manufacture and sale of

5    vehicles with the Takata airbags, and Defendants' failure to adequately investigate,

6    disclose and remedy, offend established public policy, and because of the harm they

7    cause to consumers greatly outweighs any benefits associated with those practices.

8    Defendants' conduct has also impaired competition within the automotive vehicles

9    market and has prevented Plaintiffs and Class Members from making fully

10   informed decisions about whether to purchase or lease Class Vehicles and/or the

11   price to be paid to purchase or lease Class Vehicles.

12       165.   Plaintiffs and Class Members have suffered injuries in fact, including

13   the loss of money or property, as a result of Defendants' unfair, unlawful, and/or

14   deceptive practices.  As set forth above, each Class Member, in purchasing or

15   leasing their vehicles, relied on the misrepresentations and/or omissions of

16   Defendants with respect of the safety and reliability of the vehicles.  Defendants'

17   representations turned out not to be true.  Had Plaintiffs and Class Members known

18   this, they would not have purchased or leased their Class Vehicles and/or paid as

19   much for them.

20       166.   All of the wrongful conduct alleged herein occurred, and continues to

21   occur, in the conduct of Defendants' businesses.  Defendants' wrongful conduct is

22   part of a pattern or generalized course of conduct that is still perpetuated and

23   repeated, both in the State of California and nationwide.

24       167.   As a direct and proximate result of Defendants' unfair and deceptive

25   practices, Plaintiffs and Class Members have suffered and will continue to suffer

26   actual damages.

27       168.   Plaintiffs and Class Members request that this Court enter such orders

28   or judgments as may be necessary to enjoin Defendants from continuing their

1  unfair, unlawful, and/or deceptive practices, as provided in Cal. Bus. & Prof. Code
2  § 17203; and for such other relief set forth below.

3      169.   Plaintiffs and Class Members also request equitable and injunctive
4  relief in the form of Court supervision of Defendants' numerous recalls of the
5  various Class Vehicles, to ensure that all affected vehicles are recalled and that the
6  recalls properly and adequately cure the dangers and risks posed by the Takata
7  airbags.

8                          **SIXTH CLAIM FOR RELIEF**
              **Violation of the California False Advertising Law**
9                  **Cal. Bus. & Prof. Code § 17500, *et seq.***
                  **(Brought on behalf of the Nationwide Class)**
10

11     170.   This Claim for Relief is brought on behalf of Plaintiffs and Class
12  Members.

13     171.   Plaintiffs hereby incorporate by reference the allegations contained in
14  the preceding paragraphs of this Complaint, as if fully set forth herein.

15     172.   California Business and Professions Code § 17500 states:  "It is
16  unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of
17  real or personal property . . . to induce the public to enter into any obligation
18  relating thereto, to make or disseminate or cause to be made or disseminated . . .
19  from this state before the public in any state, in any newspaper or other publication,
20  or any advertising device, . . . or in any other manner or means whatever, including
21  over the Internet, any statement . . . which is untrue or misleading, and which is
22  known, or which by the exercise of reasonable care should be known, to be untrue
23  or misleading. . . ."

24     173.   Defendants caused to be made or disseminated through California and
25  the United States, through advertising, marketing and other publications, statements
26  that were untrue or misleading, and which were known, or which by the exercise of
27  reasonable care should have been known to the Defendants, to be untrue and
28  misleading to consumers, Plaintiffs, and Class Members.

174. Defendants violated section 17500 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

175. Plaintiffs and Class Members have suffered injuries in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their vehicles, Plaintiffs and Class Members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of their vehicles.  Defendants' representations turned out not to be true. Had Plaintiffs and Class Members known this, they would not have purchased or leased the Class Vehicles and/or paid as much for them.

176. Accordingly, Plaintiffs and Class Members overpaid for the Class Vehicles and did not receive the benefit of their bargain.  One way to measure this overpayment, or lost benefit of the bargain, at the moment of purchase is by the value consumers place on the vehicles now that the truth has been exposed.  Both trade-in prices and auction prices for Class Vehicles have declined as a result of Defendants' misconduct.  This decline in value measures the overpayment, or lost benefit of the bargain, at the time that Plaintiffs and Class Members acquired the Class Vehicles.

177. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses.  Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

178. Plaintiffs and Class Members request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices, and for such other relief set forth below.

## SEVENTH CLAIM FOR RELIEF
### Negligent Failure to Recall
### (Brought on behalf of the Nationwide Class)

179.   This Claim for Relief is brought on behalf of Plaintiffs and Class Members.

180.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

181.   Defendants knew or reasonably should have known that the Class Vehicles and/or Takata airbags were dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner.

182.   Defendants either knew of the dangers posed by the Takata airbags before the vehicles and/or airbags were sold, or became aware of them and their attendant risks after the vehicles and/or Takata airbags were sold.

183.   Defendants continued to gain information further corroborating the Takata airbag-related dangers, risks and defects from its inception until the present.

184.   Defendants failed to adequately recall the Class Vehicles, vehicles with Takata airbags, and/or Takata airbags in a timely manner.

185.   Purchasers of the Class Vehicles, including Plaintiffs and Class Members, were harmed by Defendants' failure to adequately recall all the Class Vehicles and/or Takata airbags in a timely manner and have suffered damages, including, without limitation, damage to other components of the Class Vehicles caused by the Takata airbag-related defects, the diminished value of the Class Vehicles, the cost of modification of the dangerous and life-threatening Takata airbags, and the costs associated with the loss of use of the Class Vehicles.

186.   Defendants' failure to timely and adequately recall the Class Vehicles was a substantial factor in causing the purchasers' harm, including that of Plaintiffs and Class Members.

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

A.     an order certifying the proposed Nationwide Class, designating Plaintiffs as the named representative of the Nationwide Class, and designating the undersigned as Class Counsel;

B.     a declaration that the airbags in Class Vehicles are defective;

C.     a declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

D.     an order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Class Vehicles to eliminate the Defective Airbags;

E.     an award to Plaintiffs and Class Members of compensatory, exemplary, and statutory penalties and damages, including interest, in an amount to be proven at trial;

F.     an award to Plaintiffs and Class Members for the return of the purchase prices of the Class Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorney fees;

G.     a Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket expenses and damages claims associated with the Defective Airbags in Plaintiffs' and Class Members' Vehicles, can be made and paid, such that Defendants, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the Defective Airbags;

H.     a declaration that the Defendants must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits received from the

1   sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class

2   Members;

3          I.      an award of attorneys' fees and costs, as allowed by law;

4          J.      an award of pre-judgment and post-judgment interest, as provided by

5   law;

6          K.      leave to amend this Complaint to conform to the evidence produced at

7   trial; and

8          L.      such other relief as may be appropriate under the circumstances.

9                          **DEMAND FOR JURY TRIAL**

10         Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial

11  by jury of any and all issues in this action so triable of right.

12

13  Dated:  November 4, 2014          Respectfully submitted,

14                                    LIEFF CABRASER HEIMANN &
                                      BERNSTEIN, LLP
15

16                                    By: _____
17                                         Elizabeth J. Cabraser

18                                    Elizabeth J. Cabraser (State Bar No. 083151)
19                                    *ecabraser@lchb.com*
                                      Todd A. Walburg (State Bar No. 213063)
20                                    *twalburg@lchb.com*
                                      Phong-Chau G. Nguyen (State Bar No. 286789)
21                                    *pgnguyen@lchb.com*
                                      LIEFF CABRASER HEIMANN &
22                                    BERNSTEIN, LLP
                                      275 Battery Street, 29th Floor
23                                    San Francisco, CA  94111-3339
                                      Telephone:  (415) 956-1000
24                                    Facsimile:  (415) 956-1008

25

26

27

28

1    Dawn M. Barrios (*Pro Hac Vice* anticipated)
     barrios@bkc-law.com
2    Zachary Wool (*Pro Hac Vice* anticipated)
     zwool@bkc-law.com
3    BARRIOS, KINGSDORF & CASTEIX, LLP
     701 Poydras St., Suite 3650
4    New Orleans, LA 70139
     Telephone: (504) 524-3300
5    Facsimilie: (504) 524-3313

6    W. Daniel ("Dee") Miles, III (*Pro Hac Vice*
     anticipated)
7    dee.miles@beasleyallen.com
     Archie I. Grubb, II (*Pro Hac Vice* anticipated)
8    archie.grubb@beasleyallen.com
     Andrew Brashier (*Pro Hac Vice* anticipated)
9    *Andrew.Brashier@BeasleyAllen.com*
     BEASLEY ALLEN CROW METHVIN
10   PORTIS & MILES PC
     218 Commerce Street
11   Montgomery, AL 36104
     Telephone: (334) 269-2343
12   Facsimile: (334) 954-7555

13   *Attorneys for Plaintiffs Luke Hooper, Charlotte*
     *Whitehead, and Melinda Tingle, individually and*
14   *behalf of all others similarly situated*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1203335.3                           - 38 -                    CLASS ACTION COMPLAINT